UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HBA MOTORS, LLC | Case No. 1:21-cv-624 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| ARMAND BRIGANTE, ISMAIL SHALASH *et al.*, | |
| Defendants. | |

**ORDER GRANTING PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION (Doc. 3)**

This civil action is before the Court on Plaintiff's motion for a preliminary injunction (Doc. 3), which was filed on September 28, 2021. Defendants have not responded to date despite being notified of the motion. (*See* Doc. 22).

## I. BACKGROUND FACTS

The following facts are drawn from the motion for the preliminary injunction, including the declaration of Zachary Mixon and supporting exhibits. (Docs. 3, 3-1).

Plaintiff HBA Motors "(HBA")" is a Texas-based limited liability corporation that buys and sells luxury cars. (Declaration of Zachary Mixon, Doc. 3-1 at ¶¶2-3). In September 2021, an HBA employee, Zachary Mixon, received a phone call from someone who introduced himself as "Armand Brigante." (*Id.* at ¶4). It has now become clear that "Armand Brigante" is an alias for Ismail Shalash. The Court will refer to him, as "Ismail Shalash" or "Shalash," hereafter.

Shalash offered to sell HBA two Mercedes-Benz G-Class SUVs. Shalash and Mixon engaged in a dialogue regarding the potential sale. (*Id.* at ¶5). As part of this dialogue, Shalash sent Mixon photographs of:

- the cars (*Id.* at PageID# 47-49);
- the cars' Vehicle Identification Numbers ("VINs") (*Id.* at PageID# 51)
- certificates of title for each car (*Id.* at PageID# 55, 57).
- a certificate of incorporation for M.D.D.I, the purported legal entity, seemingly controlled by Shalash, that owned the cars. (*Id.* at PageID# 53).

Relying on those documents and other representations from Shalash, HBA decided to buy the cars—one for $245,000.00, the other for $252,000.00. (*Id.* at ¶8). Shalash provided a bank account in the name of "M.D.D.I.," and HBA wired the full $497,000.00. (*Id.*).

After receiving the wired money, Shalash called Mixon again, offering another high-end car to HBA—a Mercedes-Benz AMG GT-R. (*Id.* at ¶9). Shalash again said he owned the vehicle and could sell it. (*Id.*). Shalash sent photographs of the AMG GT-R and the purported certificate of title. (*Id.*, Exhibits A-8 and A-9 at PageID# 60-63). Relying on the representations and photographs, HBA agreed to buy the AMR-GT for $493,815.00. (*Id.* at ¶9). HBA wired $493,815.00 to Shalash. (*Id.* at ¶10).

Shalash provided a Cincinnati address at which HBA could pick up all three cars. (*Id.* at ¶11). On September 20, 2021, HBA's hired transport truck arrived at the address. (*Id.*). The cars were not on the lot. (*Id.*). Neither was anyone who knew of the cars or of someone named "Brigante." (*Id.*). Mixon called Shalash. (*Id.* at ¶12). The line was

disconnected. (*Id.*). Mixon sent several emails to Shalash and did not receive a response. (*Id.*).

In total, HBA alleges it paid $990,815.00 to Defendant Shalash or his purported business entity M.D.D.I. Therefore, HBA's total out-of-pocket loss is $990,815.00, plus any applicable interest. (Doc. 3 at 1).

HBA filed a complaint and motions for a temporary restraining order ("TRO") and a preliminary injunction against Shalash. (Doc. 3). Since filing the complaint, HBA has given this Court credible information suggesting Ismail Shalash is wanted by the F.B.I. for defrauding other would-be car purchasers (*see* F.B.I Wanted Poster, Doc. 8-1); and that Shalash knows about both this case and his status as a man wanted by the F.B.I.[1]

Finding, among other things, HBA had shown a likelihood of success on its common-law fraud claim, the Court entered a TRO against Shalash. (Doc. 15). The TRO restricted Shalash from using, converting, or disposing of HBA's assets.[2] For good cause shown, the Court extended the TRO. (Doc. 23). In its current form, the TRO is set to expire on November 4, 2021. (*Id.*).

Still unable to serve Shalash despite a wide-ranging effort,[3] HBA moved for an order approving alternative service through email. (Doc. 20). The Court granted that

---

[1] This information comes from the attorney who represents Shalash's father, David Omar. David Omar incorporated Defendant M.D.D.I., Inc., but has had nothing to do with the company for years. The attorney represented to this Court—at a telephone conference on October 5, 2021—that he has been in touch with Shalash by email. The attorney later stated in writing that he forwarded all pleadings to Shalash and that Shalash knows about the case against him. (*See* Doc. 13).

[2] The Court's order granting the motion for a TRO denied that portion of the motion requesting an asset freeze. (*See* Doc. 15 at 8).

motion. (Doc. 21). On October 28, 2021, HBA filed a notice stating it had effectuated service through email. (Doc. 22). The Court is satisfied that Ismail Shalash has been served with process and is on notice of HBA's motion for a preliminary injunction.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(a)-(b) permits a party to seek injunctive relief when the party believes that it will suffer immediate and irreparable injury, loss, or damage. Nevertheless, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Ne. Ohio Coal. For Homeless & Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1099 (6th Cir. 2006). These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that

---

[3] As required by Rule 65(b)(1)(B), HBA filed a statement in writing regarding its efforts to give notice to Ismail Shalash before the Court considered HBA's motion for a TRO. (*See* Doc. 12).

there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

The Court previously evaluated the four factors for determining whether to grant injunctive relief in its Order granting HBA's motion for a TRO. (Doc. 15 at 6-11). The analysis required to evaluate a preliminary injunction is the same as that required to evaluate a TRO. *Reid v. Hood*, No. 1:10 CV 2842, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo.") (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

Defendants Shalash, and his company, M.D.D.I., have failed to participate in this litigation since its inception and the imposition of the TRO. Accordingly, the Court has learned no new information that would change its analysis on the question of injunctive relief. For that reason, the Court hereby reincorporates its previous finding that injunctive relief is warranted in this case. (Doc. 15). A short summary of the reasons for the injunctive relief will suffice here.

HBA has demonstrated a likelihood of success on the merits of its common-law fraud claim. Through Mixon's declaration and the documents attached thereto, HBA substantiates each element of common-law fraud. (Doc. 3-1). Plaintiffs have also met their burden in showing a likelihood of irreparable harm. Based on Shalash's apparent behavior, there is good reason to believe the money HBA wired to Shalash would not be

available, absent injunctive relief, to satisfy a judgment on the merits. A preliminary injunction is thus necessary to maintain the status quo. Finally, there is no evidence of substantial harm to others that would arise from granting the injunction and granting the injunction would be in the public interest. Accordingly, HBA's motion for a preliminary injunction is meritorious and will be granted.

## IV. CONCLUSION

For these reasons, Plaintiff HBA's motion for a preliminary injunction (Doc. 3) is **GRANTED.**

Specifically, the Court orders as follows:

1. Defendants Ismail Shalash and M.D.D.I. Inc. **SHALL NOT** individually, nor through others, use, convert, or dispose of HBA's assets in their possession, custody, and control inclusive of funds in an amount up to $990,815; and

2. On or before November 21, 2021, Defendants Ismail Shalash and M.D.D.I. **SHALL** provide to HBA an accounting of ALL assets under their control, management, and/or possession, and include the names of the financial institutions, account numbers, account holders, the identity of the account signatories, and current balances.

3. Forthwith, HBA **SHALL** provide Defendants with a copy of this Order by email or through any other means reasonably calculated to be received.

**IT IS SO ORDERED.**

Date: 11/4/2021

*s/Timothy S. Black*
Timothy S. Black
United States District Judge